# BETTY L. ELLWOOD
*v.*
# DEPARTMENT OF REVENUE

Betty L. Ellwood, plaintiff, appeared in propria persona.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered March 23, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed to this court from the defendant's Order No. VL 76-386, dated June 4, 1976, denying plaintiff's petition for the reduction of the true cash value of real property in Douglas County, identified as Assessor's Account No. 12891.00, on the ground that plaintiff did not prove her case by a preponderance of the evidence.

The property involved is 32.19 acres which lies, for the most part, on the north side of the Tiller-South Umpqua Highway. The road, running northeast of the property, along the South Umpqua River, upon being widened and improved, reduced the value of the subject property, according to plaintiff. The land,

situated in Sec. 27, T 30 S, R 2 W, WM, Douglas County, has a small level area along the road and then slopes steeply to the north, covered with brush, oak and some fir trees. The improvements consist of two old cabins in extremely poor condition, but they have been used as rental property. The land is classed 4-0-1, rural tract, and this appears to be its highest and best use.

As of January 1, 1975, the assessed value was set at $10,400 with $330 thereof allotted to the "improvements." Upon plaintiff's appeal, the board of equalization increased the assessed value to $16,100 with $500 assigned to the improvements. Before both the defendant's hearing officer and this court, plaintiff sought a reduction of the total value to $8,500 with $300 assigned to improvements.

The subject land was originally 33 acres in size but was reduced to 32.19 acres by the taking of 0.81 acre by the county to widen the road along the South Umpqua River. (Petitioner was reimbursed in the sum of $1,500 for the taking by the county.)

The court is severely handicapped in its effort to reach a proper decision by a lack of acceptable testimony from either plaintiff or defendant. However, the probability of the admissible evidence supports the plaintiff's position that the value for land adopted by the county board of equalization was too high.

The defendant's sole witness was an appraiser who had been employed by the county assessor for 2½ years, appraising residential and rural properties. In qualifying himself, he testified that he had taken several appraisal courses and that he was familiar with the subject property. However, although he stated that he had inspected the property three different times, it became apparent, in the course of his testimony, that he had overlooked the fact that four acres were separated by the river from the larger parcel. More significantly, in connection with his alleged comparable sale No. 4, the defendant's witness

used a 69-acre parcel which contained 16 acres of pasture in addition to a steep portion, equating this with the subject property which contains steep land rising from the roadside, with only a very small portion (the homesite) which is relatively level. The following dialogue occurred on cross-examination:

"Q [by the plaintiff, Mrs. Ellwood] On sale number four, which was the rolling—which was rolling hills and pastureland and you have placed this in the same classification as the subject property?

"A I—I used the steep portion of it as a comparable land. * * *

"* * * * *

"The Court: I was—I would ask a question here. You've testified, Mr. * * *, that you used number four but you used the steep portion. Now all you had was the sale price. How did you make adjustment as to the allowable—apportionment for the number—for the steep portion as against the gently rolling pastureland there? Do you have some figures on that?

"A (by witness) No, I don't, Your Honor.

"The Court: Did you just make a guess? What did you do? I don't understand how you did it myself. I'm interested. You compared only the steep portion of sale number four. How did you make a comparison of only the steep portion? You had to resolve it in dollar figures.

"A I just used the overall acreage.

"The Court: Then you didn't make an apportionment?

"A No.

"The Court: Well, then, you haven't told the truth because you said you had made an apportionment.

"A Well, I—

"The Court: I'll strike out number four without any further reference to it."

■■ Upon consideration, the court has determined to strike all the testimony of the defendant's only witness. The maxim "that a witness false in one part of his testimony is to be distrusted in others" is based upon common human experience and is a recognized jury instruction on all proper occasions. ORS 17.250(3). It is applicable in the present suit. In the situation described, the witness sought to mislead the

court by asserting as a comparable property sale a transaction in which the sales value alleged must have been substantially based on a part of the property much more valuable than plaintiff's, the witness falsely stating that he had segregated that property from the like property (intimating the use of a residual technique which was actually not carried out). The court was shocked by this disclosure. The testimony of an expert witness without probity is useless. A trained appraiser in the employ of the county assessor has only one mission; namely, to ascertain the true cash value of taxable property as of the assessment date. He must be impartial, seeking to aid the court in obtaining a just result. Further, he has a duty to maintain the integrity of and trust in that part of government which employs him.

The plaintiff impressed the court as being honest and intelligent but she has had no training in the presentation of a property tax problem.

A great part of plaintiff's effort related to the taking of 0.81 acre for the purpose of widening and realigning the road which cuts through her property adjacent to the riverbank. She was greatly discomfited by this taking, because (she alleged) the accessibility to the river beaches of her roadside property and to the four acres of property across the river was destroyed, access to the homesite was impaired, and, because of the destruction of trees, an important noise barrier was eliminated. (She testified that the improved road permits log trucks to race by at high speeds immediately adjacent to the homesite.) However, all this occurred after January 1, 1975, the assessment date, and is a subject for consideration with regard to the assessment of January 1, 1976, not here.

As has been stated, the plaintiff purchased the property in November 1970 for $9,000, after the property had been exposed to the market for five years. At the time of purchase, the two buildings were in a reasonable state of repair but since that time and

before January 1, 1975, they had been extensively vandalized and, as the plaintiff testified, were unfit for human use. (Nevertheless, she found trespassers using the buildings and has been able to obtain a few dollars of rental from them.)

The defendant's evidence having been rejected, the court must rely wholly on the useful evidence of value placed in the record by plaintiff and that which can be judicially noted. As stated above, the purchase price of the subject property in November 1970 was $9,000, including the two buildings. The record is not clear, but it appears that on the purchase date, about $3,000 could be attributed to the buildings. Since purchase, the buildings have been almost destroyed by vandalism and only a token value was ascribed to them as of January 1, 1975 ($330 by the county assessor, $500 by the board of equalization, $300 by plaintiff).

As of January 1, 1975, the county assessor placed $10,070 on the roll as the true cash value of the land. When plaintiff appealed this value to the county board of equalization, two members of the county's appraisal staff (one being the appraiser whose work has been rejected by this court) recommended to the board an increase in value to $20,920 for the land and $3,040 for the buildings. The court has not had sufficient acceptable testimony on the land values, as such, but the record shows that the value recommended by defendant's witness and his colleague on the buildings is ridiculously high and adds to the court's distrust of the appraisers' techniques and expertise. The board of equalization, after hearing, discounted the recommendations, setting a value on the land of $15,600, and $500 on the buildings. The board's increase was based on a recommendation which rests on the same infirmities, basically, as other testimony of defendant's witness.

On this state of the record, the court must sustain the county assessor's original assessed value: land, $10,070; improvements, $330; a total of $10,400 as of

January 1, 1975, for Assessor's Account No. 12891.00. This value reflects the necessary trending over the plaintiff's purchase price which her own testimony admitted must be recognized. Plaintiff's allegation of a lower value was not sufficiently supported.

The County Assessor and the Tax Collector of Douglas County, Oregon, shall amend the assessment and tax rolls for the tax year 1975-1976 in accordance with this decision. If taxes have been paid by the plaintiff in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be remitted to the plaintiff by the Board of County Commissioners of Douglas County, Oregon, pursuant to ORS 311.806 and 311.812.

No costs to either party.